OPINION
{¶ 1} Robert Dodson, Jr. was indicted on two counts of felonious assault with firearm specifications. He eventually pleaded guilty to one count of felonious assault and its firearm *Page 2 
specification and to a reduced charge of aggravated assault without a firearm specification. After receiving a presentence investigation report, the court imposed an aggregate sentence of ten years on the felonious assault count and specification and a concurrent eighteen-month sentence on the aggravated assault charge. The court also ordered restitution of $150,000 as to shooting victim Gerald Edwards and $1,919.14 to shooting victim Harold Hakes.
 {¶ 2} A notice of appeal was filed and appointed appellate counsel eventually filed an Anders brief pursuant to Anders v. California
(1967), 386 U.S. 738, wherein counsel represented that he could locate no arguably meritorious issues to present on appeal.
 {¶ 3} By magistrate's order of December 28, 2007, we informed Dodson that his counsel had filed an Anders brief and of the significance of anAnders brief. We invited Dodson to file a pro se brief assigning errors for review. Dodson responded with a motion for a transcript of the plea proceedings, stating in part:
 {¶ 4} "Appellant believes the discussions of both the Criminal Rule 11 transcript and the Sentencing transcript will reveal illegal racial motivations including, but not limited to, selective prosecution and other prosecutorial misconduct, ineffective assistance of counsel, and an allocution process that was tainted."
 {¶ 5} We ordered the court to prepare a transcript, but in the course of reviewing this appeal, we learned that the plea proceedings had not been conducted on the record.
 {¶ 6} On October 7, 2008, Dodson filed a motion for discovery, stating in support of the motion:
 {¶ 7} "The Appellant is in the process of filing an appeal to withdraw his plea because of racial bias by the trial court, prosecutor for not filing charges against white perpetrators, and *Page 3 
his trial attorney for giving Appellant an improper sentence guideline information. To properly show the case against the prosecution, the Appellant will need discovery of the following items from the prosecution; Police and detective incident reports, all statements taken from witnesses and alleged victims, all pictures of the incident scene, any statements from witnesses from the bar. The Appellant and friend were attacked by a mob that yelled racial and life threatening slurs during their hate crime, yet the only people charged were the black people defending themselves from a mob that were upset because they were with a white woman. The crime scene clearly shows by the pictures taken by the investigators that the Appellants were attacked from the bar to 100 yards to their car. Therefore the biased charges and treatment by the court was improper."
 {¶ 8} The State opposed the motion on the authority of State v.Ishmael (1978), 54 Ohio St.2d 404, and we overruled the motion upon the authority of Ishmael, in that Dodson was improperly seeking to add material to the trial record.
 {¶ 9} On November 5, 2008, by magistrate's order, we ordered Dodson to file a pro se brief on or before November 25, 2008, with no extensions except upon a showing of extraordinary need. As of the rendering of this opinion, Dodson has neither filed a brief nor requested an extension within which to do so.
 {¶ 10} Although appointed appellate counsel concluded there were no arguably meritorious appellate issues, he did suggest two issues for review, although concluding that they lacked merit:
 {¶ 11} "1. Did the Trial Court err in declining to sentence Appellant to the shortest term of incarceration permissible? *Page 4 
 {¶ 12} "2. Was the amount of restitution imposed appropriate?"
 {¶ 13} We agree that issue 1 lacks merit. See State v. Kalish, 120 Ohio St.3d 23, 28; 2008-Ohio-4912.
 {¶ 14} We find merit in the second issue for review as it relates to victim Edwards.
 {¶ 15} R.C. 2929.18(A)(1) authorizes the trial court to order restitution "based on the victim's economic loss." As pertinent to this appeal, the statute provides:
 {¶ 16} "Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. If the court imposes restitution, the court shall order that the restitution be made to the victim in open court, to the adult probation department that serves the county on behalf of the victim, to the clerk of courts, or to another agency designated by the court. If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the court decides to impose restitution, the court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount. All restitution payments shall be credited against any recovery of economic loss in a civil action brought by the victim or any survivor of the victim against the offender."
 {¶ 17} The trial court based its restitution orders on the presentence investigation report *Page 5 
which discussed restitution as follows:
 {¶ 18} "Harold Hakes, one of the victims in this case related that he was treated for his injuries at Community Hospital and was later a patient with Dr. Ian Thompson. Expenses incurred at Community Hospital totaled $935.14 with expenses at Dr. Thompson's being $984.00 for a total of $1,919.14.
 {¶ 19} "Gerald Edwards, the other shooting victim in this offense, submitted a victim impact statement to the probation department stating that he has medical bills in excess of $150,000.00 between two hospitals and doctors. Edwards reported that the medical paperwork at his house totaled $114,700.00. Of this amount $7,500.00 was for services at Community Hospital, $9,700.00 was for services performed by Dr. Walsimbi at the Miami Valley Hospital Trauma Clinic, $79,000.00 for the hospital stay at Miami Valley, $15,000.00 for emergency room physician fees, anesthesiologist fees and other miscellaneous fees, $3,000.00 for Care Flight transportation, $500.00 for services from Dr. Paul Buchanan for follow-up treatment. Mr. Edwards related to this probation officer that he believes additional medical expenses were at his mother's house."
 {¶ 20} Before sentencing, counsel for Dodson stated that he had reviewed the presentence investigation report, and he did not request a hearing on restitution, as permitted by statute. Accordingly, we think the trial court could reasonably rely on the information supplied by Hakes, who was shot in the knee. Edwards was shot in the chest. Although the figures appearing in the PSI report appear to be rounded off, we believe that the trial court reasonably concluded they were a close approximation of Edwards' economic loss. These figures, however, only total $114,700. Edwards' statement that his medical bills exceeded $150,000, *Page 6 
and that he believed additional medical expenses were at his mother's house were insufficient to fix Edwards' economic loss — to which restitution is limited — at $150,000.
 {¶ 21} We will modify the restitution order in favor of Edwards to $114,700.
 {¶ 22} Pursuant to our responsibilities under Anders to independently review the record, we have examined the complete record and find no other arguably meritorious issues for review.
 {¶ 23} Dodson's only specific complaint about his trial counsel, quoted above in his motion for discovery, is that he gave Dodson "improper sentence guideline information." The record belies this assertion. The "plea of guilty" form that Dodson executed contained accurate statements of the maximum sentences and fines for what Dodson was pleading guilty to. The court sentenced Dodson to less than the maximum sentence for felonious assault with the firearm specification and ordered a concurrent sentence on the aggravated assault charge.
 {¶ 24} Dodson also complains of an allocution process that was "tainted" but the transcript of the sentencing portrays an extensive statement by Dodson on his own behalf.
 {¶ 25} Having found no error other than as to restitution to Edwards, we will affirm the judgment as modified.
 {¶ 26} We take no position on Dodson's stated desire to move to withdraw his guilty plea.
GRADY, J. and DONOVAN, J., concur.
Copies mailed to:
Amy M. Smith
Paul G. Hallinan
Robert Dodson, Jr.
 Hon. Richard P. Carey *Page 1